## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY PGIARK03780-02, as subrogee of ROESLEIN ALTERNATIVE ENERGY, LLC | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 4:24-CV-00512 |
| THE CINCINNATI INDEMNITY COMPANY and INDUSTRIAL & ENVIRONMENTAL CONCEPTS, INC., | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants The Cincinnati Indemnity Company ("Cincinnati") and Industrial & Environmental Concepts, Inc. ("IEC") (together, "Defendants"), per Fed. R. Civ. P. 12(c) and Local Rule 4.01(A), submit this Memorandum in Support of their Motion for Judgment on the Pleadings.

## TABLE OF CONTENTS

I. NATURE OF THE CASE……………………………………..…...………………….4

II. STANDARD OF REVIEW……………………….......…….…...……………4

III. STATEMENT OF FACTS…………………………………………………...…5

IV. ARGUMENTS & AUTHORITIES…………………………………...……9

    A.    UNDERWRITERS' CLAIMS FAIL AS A MATTER OF LAW BECAUSE THE DESIGN/BUILD AGREEMENT DID NOT REQUIRE IEC TO ADD ROESLEIN AS AN "ADDITIONAL INSURED" TO THE CINCINNATI POLICY

1

102648662.v1

**FOR CLAIMS MADE BY IEC EMPLOYEES ALLEGING BODILY INJURY**……………...................................................……………………11

**V. CONCLUSION**………………….......…………...…………………………………....…16

# TABLE OF AUTHORITIES

**Cases**
*Am. Fam. Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436 (8th Cir. 2006)……........……......……………10
*Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956 (8th Cir. 2017)...........……………………………10
*Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009)………......……......……………..4
*Bluehaven Funding, LLC v. First Am. Title Ins. Co.*, 594 F.3d 1055 (8th Cir. 2010)..................…15
*Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*, 292 F.3d 567 (8th Cir. 2002)…….......……………15
*Damon v. Groteboer*, 937 F. Supp. 2d 1048 (D. Minn. 2013)…….....…………....……………….15, 16
*Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724 (Minn. 1997)……......…………………10
*Emps. Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 165 N.W.2d 554 (Minn. 1969).................................................................................................................................................11
*Faibisch v. Univ. of Minnesota*, 304 F.3d 797 (8th Cir. 2002)....................................................... 4
*Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181 (Mo. App. W.D. 2012)……......……....………10
*Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 13 F.4th 659 (8th Cir. 2021)..........................5
*Jerry's Enterprises, Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883 (8th Cir. 2017)……......………10
*Keveney v. Missouri Mil. Acad.*, 304 S.W.3d 98 (Mo. 2010)……......……………………………16
*King's Cove Marina, LLC v. Lambert Com. Constr. LLC*, 958 N.W.2d 310 (Minn. 2021)......11, 12
*M.A.B. v. Nicely*, 911 S.W.2d 313 (Mo. App. W.D. 1995)…….....……………………………10
*Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005 (8th Cir. 2023)…….....……………………9
*Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828 (Minn. 2011)……......……………………16
*Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788 (Mo. 2015)……….....................………11
*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir.1999)............................................. 4, 5
*Progressive Preferred Ins. Co. v. Graeser*, 296 F. Supp. 3d 1099 (D. Minn. 2017)…….....……..10
*Rausch v. Julius B. Nelson & Sons, Inc.*, 149 N.W.2d 1 (Minn. 1967)…….....……………………15
*Reeves v. Allstate Ins. Co.*, 327 S.W.3d 592 (Mo. App. S.D. 2010)…….....……………………10
*Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245 (Mo. 2019) …….....………..……....….......11
*Singleton v. Singleton*, 659 S.W.3d 336 (Mo. 2023)…….....……………………..……………11
*State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642 (Mo. App. E.D. 1993)…….....……..……..10
*Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877 (Minn. 2002)…….....………………………11
*Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888 (Minn. 2006)….........10
*Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir. 1991)..............................................................9
*White Consol. Indus., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185 (8th Cir. 1999)...............................5

**Rules**
Fed. R. Civ. P. 12(c)........................................................................................................................ 4

**Treatises**
5A Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 .............................. 5

**I.      NATURE OF THE CASE**

This is a simple contract interpretation case. Plaintiff Certain Underwriters at Lloyd's London ("Underwriters") insured Roeslein Alternative Energy, LLC ("Roeslein"). Cincinnati insured Defendant IEC. Underwriters filed this action seeking recovery of a $500,000 judgment entered against Roeslein which Underwriters paid to IEC's employee Kyle Carrington for a bodily injury sustained while working for IEC. Underwriters' claims against both IEC and Cincinnati turn on whether IEC was required by a Design/Build Agreement to add Roeslein as an additional insured to Cincinnati's insurance policy issued to IEC. The Design/Build Agreement did not require IEC to do so. As a result, Defendants breached no contract with or fiduciary duty to Roeslein, Underwriters cannot recover on any of the four counts in the Amended Complaint, and this Court should enter judgment in favor of Defendants based upon the allegations in the Amended Complaint.

**II.     STANDARD OF REVIEW**

After the "pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). A court should enter judgment on the pleadings where no material issue of fact remains to be resolved, and the movant is entitled to judgment as a matter of law. *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002). A district court must "accept as true all factual allegations set out in the complaint," and construe the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

When considering a motion for judgment on the pleadings, a court may consider the pleadings, materials that are part of the public record and do not contradict the pleadings, as well as those materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall*

*Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also* 5A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1357, at 299 (noting "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" may be considered by the court in a motion for judgment on the pleadings). [1]

The "interpretation of a contract is a question of law for the court to decide." *White Consol. Indus., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185, 1190 (8th Cir. 1999) (citing *Lamb Engineering & Construction Co. v. Nebraska Public Power District*, 103 F.3d 1422, 1430 (8th Cir. 1997)) (Minnesota law); *See Jacobson Warehouse Co. v. Schnuck Markets, Inc.*, 13 F.4th 659, 668 (8th Cir. 2021) (Missouri law).

### III. STATEMENT OF FACTS

1. On March 13, 2015, Defendant IEC and Roeslein entered into a contract titled "Design/Build Agreement Between Owner and Design/Builder on a Lump Sum Basis" (the "Design/Build Agreement"). *Plaintiff's First Amended Complaint*, ECF Doc. No. 12 at ¶ 30; *Defendant IEC's Answer*, ECF Doc. No. 17 at ¶ 30.

2. The Design/Build Agreement designated Roeslein as "Owner," and Defendant IEC as "Design/Builder." *First Am. Compl.*, ECF Doc No. 12 at ¶ 31; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 31.

3. Section 5.2.1 of the Design/Build Agreement required IEC as "Design/Builder" to maintain liability insurance. It reads as follows:

---

[1] Defendants note that Plaintiff Underwriters failed to attach the Exhibits referenced in its First Amended Complaint for the Court's consideration. Defendants rely upon the portions of those exhibits referenced by Plaintiff in the First Amended Complaint. Said exhibits do not contradict the pleadings because they are the exhibits referenced by Plaintiff in the First Amended Complaint, with the plain text of their contents admitted by both Defendants in their Answers. These exhibits are necessarily embraced by the pleadings because they are referenced, and even quoted directly, throughout the First Amended Complaint. Accordingly, this Court may consider the plain text of these portions of the exhibits in adjudicating Defendants' Motion for Judgment on the Pleadings. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

102648662.v1

> 5.2.1 Design/Builder shall purchase and maintain such Commercial General Liability (subject to customary exclusions in respect of professional liability), Automobile Liability and Worker's Compensation insurance as is appropriate for the Work being performed and furnished and as shall provide protection from claims set forth below which may arise out of or result from Design/Builder's performance and furnishing of the Work and Design/Builder's other obligations under the Agreement. . .

*First Am. Compl.*, ECF Doc. No. 12, at ¶ 34; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 34; *Defendant Cincinnati's Answer*, ECF Doc. No. 18, at ¶ 34.

4. Section 5.2.2 of the Design/Build Agreement placed additional requirements on IEC's procurement of liability insurance. It required IEC to designate Roeslein as an "additional insured" on any insurance policies required by Sections 5.2.1.3 through 5.2.1.6 of the Design/Build Agreement:

> 5.2.2 The policies of insurance required by Section 5.2.1 shall:
> 5.2.2.1   With respect to insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive, include as additional insureds, the Owner, Owner's affiliates and the property owner and any other persons or entities identified in writing by Owner, all of whom shall be listed as additional insureds, and include coverage for the respective Owner's officers and employees of all such additional insureds;

*First Am Compl.*, ECF Doc. No. 12, at ¶ 34–35; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 34–35; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 34–35.

5. The "additional insured" requirement placed on IEC and set forth in Section 5.2.2.1 of the Design/Build Agreement only applied to insurance required by Sections 5.2.1.3 through 5.2.1.6 of the Design/Build Agreement—it did not apply to the insurance required by Section 5.2.1.2 of the Design/Build Agreement, which reads as follows:

> 5.2.1.2 Claims for damages because of bodily injury, occupational sickness or disease, or death of Design/Builder's employees;

*First Am Compl.*, ECF Doc. No. 12, at ¶ 34; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 34; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 34.

6. Defendant Cincinnati issued a Commercial General Liability Policy to Defendant IEC with Policy Number EPP 005 04 44 / EBA 005 04 44, effective from January 1, 2015 to January 1, 2018 (the "Cincinnati Policy"). *First Am Compl.*, ECF Doc. No. 12, at ¶ 36; *Defendant Cincinnati's Answer*, ECF Doc. No. 18, at ¶ 36; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 36.

7. The Cincinnati Policy included an endorsement applicable to the Commercial General Liability Coverage titled "Contractors' Commercial General Liability Broadened Endorsement." *First Am Compl.* ECF Doc No. 12, at ¶ 39; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 39; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 39.

8. The first three counts of Plaintiff's First Amended Complaint against Cincinnati assert that Roeslein was an Automatic Additional Insured per the terms of the Cincinnati Policy, and the fourth count against IEC alleges that Roeslein should have been an additional insured under IEC's insurance policy. *First Am. Compl.*, ECF Doc. No. 12, at ¶ 52, 58, 64, 71–73.

9. The automatic additional insureds endorsement to the Cincinnati Policy reads as follows:

> 9. **Automatic Additional Insured – Specified Relationships**
>
> a. The following is hereby added to **SECTION II – WHO IS AN INSURED:**
>
> (1) Any person or organization described in Paragraph **9.a.(2)** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:
>
> **(a)** A written contract or agreement...

7

> > **(b)** An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued,
>
> is an insured, provided:
>
> > **(a)** The written or oral contract or agreement is:
> >
> > > **1)** Currently in effect or becomes effective during the policy period; and
> > >
> > > **2)** Executed prior to an "occurrence" or offense to which this insurance would apply...

*See First Am. Compl.*, ECF Doc. No. 12, at ¶ 40; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 40; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 40.

10. In late 2021, Kyle Carrington filed case number 21GE-CC00096 in the Circuit Court of Gentry County, Missouri seeking damages for a bodily injury sustained on September 26, 2016 while working for IEC. *First Am. Compl.*, ECF Doc. No. 12, at ¶ 8–10, 19–20; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 8–10, 19–20; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 8–10, 19–20.

11. The named defendants in the underlying suit were Roeslein, Chris Cureton, and IEC. *First Am. Compl.*, ECF Doc. No. 12, at ¶ 8, 21; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 8, 21; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 8, 21.

12. Carrington in the underlying suit alleged that he endured a methane gas explosion, which injured him. *First Am. Compl.*, ECF Doc. No. 12, at ¶ 19–20; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 19–20; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 19–20.

13. Carrington in the underlying suit specifically alleged that he was Defendant IEC's employee, and that on September 26, 2016, he and other IEC employees excavated a trench around

8

a particular pond. *First Am. Compl.*, ECF Doc. No. 12, at ¶ 9–10, 14, 18; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 9–10, 14, 18; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 9–10, 14, 18.

14. The Circuit Court of Gentry County, Missouri in the underlying suit found that Carrington was IEC's employee, and dismissed IEC, holding it was immune from suit based on Missouri Worker's Compensation law. *First Am. Compl.*, ECF Doc. No. 12, at ¶ 22; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 22.

15. On September 8, 2022, the Circuit Court of Gentry County, Missouri entered judgment in favor of Carrington and against Roeslein in the amount of $500,000.00. The judgment's plain text specifically noted that "On September 26, 2016, Carrington was working for IEC on a farm jobsite in Bethany, Missouri." *First Am. Compl.*, ECF Doc. No. 12, at ¶ 23–24; *Def. Cincinnati's Ans.*, ECF Doc No. 18 at ¶ 23–24; *Def. IEC's Ans.*, ECF Doc No. 17 at ¶ 23–24.

16. Plaintiff Underwriters, to which Underwriters alleges Roeslein assigned its putative claim, now brings this lawsuit against Cincinnati for breach of contract and breach of fiduciary duty, and against IEC for breach of contract. *See generally First Am. Compl.*, ECF Doc No. 12.

IV. **ARGUMENT & AUTHORITIES**

A federal court sitting in diversity "[applies] the law of the forum state." *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023). When jurisdiction is based on diversity, the forum state's choice of law analysis applies. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991). As this Court sits in Missouri, it must apply Missouri's choice of law rules. *See id.* Here, the Cincinnati Policy was issued to Defendant IEC, a Minnesota insured. SOF ¶ 6. This Court need not decide whether Missouri or Minnesota law applies under Missouri's choice-of-law rules to answer the dispositive question in this case—whether IEC was required to

9

name Roeslein as an additional insured—because the laws of both states lead to the same outcome. And, a "federal court is well-suited to apply the law of any state." *Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 962 (8th Cir. 2017).

Under Missouri law, the party "seeking to establish coverage under an insurance policy has the burden of proving that the claim is within the coverage afforded by the policy." *M.A.B. v. Nicely*, 911 S.W.2d 313, 315 (Mo. App. W.D. 1995); *see also Am. Fam. Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir. 2006); *State Farm Fire & Cas. Co. v. D.T.S.*, 867 S.W.2d 642, 644 (Mo. App. E.D. 1993); *Reeves v. Allstate Ins. Co.*, 327 S.W.3d 592, 596 (Mo. App. S.D. 2010); *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 187 (Mo. App. W.D. 2012). Likewise, under Minnesota law, the party seeking to establish coverage "bears the initial burden of demonstrating coverage," and "the essential terms and conditions of coverage must be proved." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006); *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 736 (Minn. 1997); *see also Progressive Preferred Ins. Co. v. Graeser*, 296 F. Supp. 3d 1099, 1103 (D. Minn. 2017); *Jerry's Enterprises, Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 887 (8th Cir. 2017).

Here, Plaintiff Underwriters cannot meet its burden of establishing coverage either under the Cincinnati Policy. If it is assumed for purposes of this Motion that the Design/Build Agreement applied to the work being performed when Carrington was injured, the Design/Build Agreement did not require IEC to add Roeslein as an additional insured to its insurance policy for claims made by IEC employees alleging bodily injury. Carrington in the underlying suit was an IEC employee alleging bodily injury. Because Carrington was an IEC employee alleging bodily injury, and because the Design/Build Agreement did not require IEC to add Roeslein as an "additional

10

insured" to its insurance policy for claims made by IEC employees alleging bodily injury, Underwriters' claims fail as a matter of law.

> A. **Underwriters' claims fail as a matter of law because the Design/Build Agreement did not require IEC to add Roeslein as an "additional insured" to the Cincinnati Policy for claims made by IEC employees alleging bodily injury.**

Under both Missouri and Minnesota law, a court interpreting an insurance policy should give the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance. *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. 2019) (quoting *Doe Run Res. Corp. v. Am. Guar. & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. 2017)); *King's Cove Marina, LLC v. Lambert Com. Constr. LLC*, 958 N.W.2d 310, 316 (Minn. 2021). When an insurance policy is "clear and unambiguous," the court must enforce the policy as written. *Seaton*, 574 S.W.3d at 247; *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). The same is true of contracts as a whole, as a court "must ascertain the intent of the parties by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Singleton v. Singleton*, 659 S.W.3d 336, 341 (Mo. 2023); *see Emps. Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 165 N.W.2d 554, 556 (Minn. 1969) ("in the interpretation of insurance contracts, as with any other contract, we start with the principles that the parties are free to contract as they see fit and that the language of the contract is to be given its plain and ordinary meaning").

As noted by the Supreme Court of Missouri, "CGL insurance is generally not intended to cover liability for injuries to employees," and "the purpose of CGL insurance is to protect businesses against the potentially vast liability that can arise from accidentally injuring members of *the public*." *Piatt v. Indiana Lumbermen's Mut. Ins. Co.*, 461 S.W.3d 788, 792–93 (Mo. 2015) (emphasis in original). The Supreme Court of Minnesota would likely agree that CGL insurance

is not intended to cover liability for injuries to employees, as in its view, "the general purpose of a commercial general liability policy. . . is intended to protect the insured when its work 'damages someone else's property' and is not intended to be a performance bond covering an insured's own work." *King's Cove Marina, LLC*, 958 N.W.2d at 319.

Here, the first three counts of Plaintiff's First Amended Complaint against Cincinnati assert that Roeslein was an Automatic Additional Insured per the terms of the Cincinnati Policy, and the fourth count against IEC alleges that Roeslein should have been an additional insured under IEC's insurance policy. SOF ¶ 8. In defining an "Automatic Additional Insured," the Cincinnati Policy provides that "any person or organization described in Paragraph 9.a.(2) below. . . whom you are required to add as an additional insured under this Coverage Part by reason of. . . A written contract or agreement. . . is an insured." SOF ¶ 9. If IEC was not required by "written contract or agreement" to name Roeslein as an additional insured, Roeslein was not an additional insured under the Cincinnati Policy and IEC cannot be held liable for breach of contract for not having Roeslein as an additional insured under the Cincinnati Policy.

The "written contract or agreement" referenced in the Cincinnati Policy upon which Plaintiff Underwriters relies to assert that Roeslein was an "automatic additional insured" under the Cincinnati policy is the Design/Build Agreement entered into between Roeslein and IEC. SOF ¶ 8, 16. Under the Design/Build Agreement, Roeslein is the "Owner," and Defendant IEC is the "Design/Builder." SOF ¶ 2.

Section 5.2.2 of the Design/Build Agreement required IEC to designate Roeslein as an "additional insured" on any insurance policy required by Sections 5.2.1.3 through 5.2.1.6 of the Design/Build Agreement:

5.2.2    The policies of insurance required by Section 5.2.1 shall:

12

> 5.2.2.1   *With respect to insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive, include as additional insureds, the Owner,* Owner's affiliates and the property owner and any other persons or entities identified in writing by Owner, all of whom shall be listed as additional insureds, and include coverage for the respective Owner's officers and employees of all such additional insureds;

SOF ¶ 4 (emphasis added). Roeslein was the "Owner" per the Design/Build Agreement. SOF ¶ 2. So, by substituting "Roeslein" for the term "Owner", Section 5.2.2.1 of the Design/Build Agreement is more easily understood as follows:

> 5.2.2.1   *With respect to insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive, include as additional insureds, Roeslein,* Roeslein's affiliates and the property owner and any other persons or entities identified in writing by Roeslein, all of whom shall be listed as additional insureds, and include coverage for Roeslein's officers and employees of all such additional insureds;

The Design/Build Agreement did not require IEC to name Roeslein as an additional insured for insurance required by Section 5.2.1.2 because Section 5.2.1.2 is not included in the specified range of "Sections 5.2.1.3 through 5.2.1.6 inclusive." SOF ¶ 4, 5.

The insurance required by Section 5.2.1.2 was the type of insurance applicable to Carrington's personal injury suit in the underlying action—the judgment for which Plaintiff Underwriters is now trying to recoup. Section 5.2.1.2 required insurance for the following:

> 5.2.1.2   *Claims for damages because of bodily injury*, occupational sickness or disease, or death *of Design/Builder's employees*;

SOF ¶ 5 (emphasis added). Again, IEC was the "Design/Builder" per the Design/Build Agreement. SOF ¶ 2. So, by substituting "IEC" with the term "Design/Builder", Section 5.2.2.1 of the Design/Build Agreement is more easily understood as follows:

13

> 5.2.1.2 *Claims for damages because of bodily injury*, occupational sickness or disease, or death *of IEC's employees*;

The underlying suit and judgment resulted from a claim for damages because of bodily injury of an IEC employee as contemplated by Section 5.2.1.2 of the Design/Build Agreement. In the underlying suit against Chris Cureton, Roeslein, and IEC, plaintiff Carrington alleged that he endured a methane gas explosion, which injured him. SOF ¶ 11, 12. Carrington brought a claim for damages because of bodily injury. Further, in the underlying suit, plaintiff Carrington specifically alleged that he was Defendant IEC's employee and that he and other IEC employees excavated a trench around a particular pond. SOF ¶ 13. The Circuit Court dismissed IEC as a defendant in the Carrington lawsuit because Carrington was IEC's employee. SOF ¶ 14. The judgment confirmed same, noting that "on September 16, 2016, Carrington was working for IEC on a farm jobsite in Bethany, Missouri." SOF ¶ 15. Thus, the underlying suit was a claim for damages because of bodily injury of an IEC employee, bringing the claim squarely under Section 5.2.1.2 of the Design/Build Agreement.

IEC was not required to name Roeslein as an additional insured to its Cincinnati Policy for claims by IEC employees alleging bodily injury. Section 5.2.2.1 of the Design/Build Agreement only required IEC to designate Roeslein as an "additional insured" on any insurance policy required by Sections 5.2.1.3 through 5.2.1.6 of the Design/Build Agreement—not for insurance required by Section 5.2.1.2 because Section 5.2.1.2 is not included in "Sections 5.2.1.3 through 5.2.1.6 inclusive." SOF ¶ 4, 5. The insurance required by Section 5.2.1.2 was the type of insurance applicable to Carrington's personal injury suit as an IEC employee in the underlying action. Thus, IEC was not required to name Roeslein as an additional insured to its Cincinnati Policy for claims by IEC employees alleging bodily injury.

The first three counts of Plaintiff's First Amended Complaint against Cincinnati assert that Roeslein was an Automatic Additional Insured per the terms of the Cincinnati Policy, and the fourth count against IEC alleges that Roeslein should have been an additional insured under IEC's insurance policy. SOF ¶ 8. IEC was not required to name Roeslein as an additional insured to its Cincinnati Policy for claims by IEC employees alleging bodily injury, and thus all of Plaintiff Underwriters' putative claims fail against both Defendants.

As to Counts I and II against Defendant Cincinnati alleging that Cincinnati failed to defend and indemnify Roeslein, Roeslein was not an "automatic additional insured" per the terms of the Cincinnati Policy. Defendant Cincinnati was not contractually obligated to defend or indemnify Roeslein against IEC employee Carrington's personal injury claim in the underlying suit, so Counts I and II fail. *See Bluehaven Funding, LLC v. First Am. Title Ins. Co.*, 594 F.3d 1055, 1060 (8th Cir. 2010) (noting that under Missouri law, "a defendant who has contracted with another owes no duty to a plaintiff who is not a party to that agreement"); *see Rausch v. Julius B. Nelson & Sons, Inc.*, 149 N.W.2d 1, 7 (Minn. 1967) ("it is the general rule that contract provisions do not create duties to strangers to the contract").

As to Count III against Defendant Cincinnati alleging breach of fiduciary duty, again, because Roeslein was not an "automatic additional insured" per the terms of the Cincinnati Policy, Cincinnati did not owe Roeslein a fiduciary duty, and Cincinnati's alleged failure to defend and indemnify Roeslein against IEC employee Carrington's personal injury claim in the underlying suit is not actionable as a breach of a fiduciary duty. *See Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*, 292 F.3d 567, 572 (8th Cir. 2002) (noting that under Missouri law, a necessary element of a claim for breach of fiduciary duty is the existence of a fiduciary relationship between the parties); *See Damon v. Groteboer*, 937 F. Supp. 2d 1048, 1083 (D. Minn. 2013) (under Minnesota

law, "to prevail on a claim for breach of fiduciary duty, the [plaintiff] must demonstrate the existence of a duty...").

Finally, as to Count IV against Defendant IEC for breach of contract, again, the Design/Build Agreement did not require IEC to name Roeslein as an additional insured to its Cincinnati Policy for claims by IEC employees alleging bodily injury. IEC did not breach the Design/Build Agreement by not naming Roeslein as an additional insured to its Cincinnati Policy for claims by IEC employees alleging bodily injury, which was exactly the type of claim presented underlying Carrington lawsuit. Count IV fails because the contract between IEC and Roeslein—the Design/Build Agreement—was not breached. *See Keveney v. Missouri Mil. Acad.*, 304 S.W.3d 98, 104 (Mo. 2010) ("a breach of contract action includes the following essential elements... breach of the contract by the defendant"); *see Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (under Minnesota law, to prevail on a claim for breach of contract, a plaintiff must prove... "breach of the contract by defendant").

## V. CONCLUSION

Defendants breached no contract with or fiduciary duty to Roeslein. Plaintiff Underwriters cannot recover on any of the four counts in the Amended Complaint. Thus, this Court should enter judgment in favor of Defendants.

**WALLACE SAUNDERS**

By: */s/ Thomas A. Fiegener*
Karl Kuckelman (*Pro Hac Vice*) MO 44045
Thomas A. Fiegener        MO 71883
10111 W. 87th Street
Overland Park, KS  66212
Phone: 913-888-1000
Fax: 913-888-1065
kk@wsabe.com
tfiegener@wallacesaunders.com

***ATTORNEYS FOR DEFENDANTS THE CINCINNATI INDEMNITY COMPANY AND INDUSTRIAL & ENVIRONMENTAL CONCEPTS, INC.***

## CERTIFICATE OF SERVICE

I certify that on the 19th day of June, 2024, I electronically filed the foregoing with the Clerk of the Court using the e-filing system which will send notification of such filing to the following participants:

M. Courtney Koger
KUTAK ROCK, LLP
2300 Main Street, Suite 800
Kansas City, MO 64108

ATTORNEYS FOR PLAINTIFF


 */s/Thomas A. Fiegener*
For the Firm

17
102648662.v1