UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRBING TO POLICY PGIARK03780-02, *as subrogee of* ROESLEIN ALTERNATIVE ENERGY, LLC, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:24-cv-00512-MTS |
| THE CINCINNATI INDEMNITY COMPANY, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants The Cincinnati Indemnity Company and Industrial & Environmental Concepts, Inc. (together, "Defendants")'s Motion for Judgment on the Pleadings, Doc. [19]. Plaintiff Certain Underwriters at Lloyd's, London, Subscribing to Policy PGIARK03780-02 ("Underwriters") filed its Opposition, Doc. [25], and Defendants have filed their Reply in support, Doc. [27]. For the reasons that follow, the Court will deny Defendants' Motion without prejudice.

**Legal Standard**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." A court should grant a motion for judgment on the pleadings "if, assuming as true all facts pleaded by the nonmoving party and according it all reasonable inferences, no material issue of fact remains, and the moving party is entitled to judgment as a matter of law." *Thach v. Tiger Corp.*, 609 F.3d 955, 957 (8th Cir. 2010)

(citing *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008)). In assessing a Rule 12(c) motion, courts apply the same standard as is applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (citation omitted). Thus, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gallagher*, 699 F.3d at 1016 (quoting *Iqbal*, 556 U.S. at 678). The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).

**Background**[1]

This case arises out of a Design/Build Agreement reached by Defendant Industrial & Environmental Concepts, Inc. ("IEC") and Roeslein Alternative Energy, LLC ("Roeslein") in March of 2015. Doc. [12] ¶ 30. Pursuant to that agreement, IEC would construct a "complete, fully integrated, fully functional and operational lagoon cover and gas collection system" on a

---

[1] The Court recites the facts as alleged in Plaintiff's First Amended Complaint. Doc. [12]. In addition, the Court considers the documents incorporated as exhibits within the Complaint. *See Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.1 (8th Cir. 2012) (explaining that a court can consider "exhibits attached to the complaint whose authenticity is unquestioned"). Although Plaintiff did not contemporaneously file the exhibits cited within the First Amended Complaint, *see, e.g.*, Doc. [12] ¶ 30 (acknowledging that a relevant document was "attached as Exhibit 3"), Plaintiff supplemented the record with the missing documents when it responded to the present Motion, *see* Doc. [25].

farm owned by Roeslein.  *Id.* ¶ 31–33.  The agreement also required IEC to purchase and maintain "Commercial General Liability . . . Automobile Liability and Worker's Compensation insurance."  *Compare* Doc. [12] ¶ 34, *with* Doc. [25-3] at 9.  Those insurance policies needed to "provide protection from claims . . . which may arise out of or result from [IEC]'s performance and furnishing of the Work and [IEC]'s other obligations under the Agreement."  Doc. [25-3] at 9.  The agreement further delineated the following categories of claims:

> 5.2.1.1   Claims under workers' compensation, disability benefits and other similar employee benefit acts;
>
> 5.2.1.2  Claims for damages because of bodily injury, occupational sickness or disease, or death of [IEC]'s employees;
>
> 5.2.1.3  Claims for damages because of bodily injury, sickness or disease, or death of any person other than [IEC]'s employees;
>
> 5.2.1.4  Claims for damages insured by customary personal injury liability coverage which are sustained (i) by any person as a result of an offense directly or indirectly related to the employment of such person by [IEC], or (ii) by any other person for any other reason;
>
> 5.2.1.5  Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property [further limited under additional provisions not relevant here];
>
> 5.2.1.6  Claims for damages because of bodily injury or death of any person or property damage arising out of the ownership, maintenance or use of any motor vehicle.

*Id.* at 10.  Pursuant to the agreement, IEC was required to list Roeslein as an additional insured "with respect to insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive."  *Compare* Doc. [12] ¶ 34–35, *with* Doc. [25-3] at 10.

Thereafter, Defendant The Cincinnati Indemnity Company ("Cincinnati") issued IEC a Commercial General Liability ("CGL") policy, which was in "full force and effect" during

the relevant period. Doc. [12] ¶ 36–37. The CGL policy included an endorsement modifying the Commercial General Liability coverage to include, as an automatic additional insured, "[a]ny person or organization . . . [IEC was] required to add as an additional insured . . . by reason of [a] written contract or agreement." *Id.* ¶ 40. As relevant here, the "automatic additional insured" provision was subject to the following limitation:

> Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein: . . . Any person or organization with which you have agreed . . . to provide insurance, but only with respect to liability arising out of "your work" performed for that additional insured by you or on your behalf.

*Id.* Relatedly, the CGL policy defines "Your Work" to mean "(1) work or operations performed by [IEC] or on your behalf; and (2) materials, parts, or equipment furnished in connection with such work or operations." Doc. [25-4] at 38.

Against this contractual backdrop, an incident occurred during IEC's work for Roeslein. On September 26, 2016, Kyle Carrington—an IEC employee—was engaged in leistering, a process by which large rolls of plastic material are placed over excrement ponds and welded together. Doc. [12] ¶ 9–11. Before that process takes place, methane gas must be extracted from the pools to prevent ignition or explosion. *Id.* Carrington expressed concern to his supervisor—also an IEC employee—about whether Roeslein had properly extracted the methane before he began welding. *Id.* ¶ 16. Despite those concerns, the supervisor instructed Carrington to begin welding or risk losing his job or pending promotion. *Id.* ¶ 18. Carrington was not given an opportunity to confirm that the extraction had occurred before he began to weld. *Id.* As he began, a spark ignited the methane gas, causing an explosion. *Id.* ¶ 19. Carrington was injured in the resulting blast. *Id.* ¶ 20.

Carrington brought suit in the Circuit Court of Gentry County, Missouri, asserting negligence claims against Roeslein, IEC, and his supervisor. *Id.* ¶¶ 8, 21. Although Roeslein repeatedly requested Cincinnati to defend it during the Carrington suit, Cincinnati refused. *Id.* ¶¶ 42–43. IEC and Carrington's supervisor were eventually dismissed from the action, *id.* ¶ 22, but Roeslein and Carrington entered into a settlement agreement, *id.* ¶ 45.[2] Pursuant to that agreement, "Roeslein and Carrington agreed to have a hearing . . . at which Carrington would present evidence of his claim, including his injuries and claimed damages." *Id.* ¶ 45. Although the agreement did not specify an amount for the court to enter as damages, it provided that Roeslein would pay Carrington a sum of $500,000 "in exchange for full satisfaction of judgment." *Id.* ¶ 46. The hearing was held on September 08, 2022, during which the court heard Carrington's evidence and entered judgment against Roeslein in the amount of $500,000. *Id.* ¶ 23. After receiving payment, Carrington filed a satisfaction of judgment. *Id.* ¶ 50. "[D]espite multiple opportunities to do so, Cincinnati refused to indemnify Roeslein or settle the claims against it." *Id.* ¶ 44.

In response to the foregoing, Plaintiff, as subrogee of Roeslein, filed this lawsuit asserting breach of contract claims against Cincinnati for its failure to defend Roeslein in Carrington's lawsuit (Count I) and Cincinnati's corresponding failure to indemnify (Count II). In addition, Plaintiff asserts a claim for breach of fiduciary duty against Cincinnati (Count III). Lastly, Plaintiff sues IEC for breach of contract stemming from its failure "to include or add Roeslein as an additional insured on its commercial general liability policy procured through

---

[2] Cincinnati was provided a copy of that agreement on or about May 10, 2022. Id. ¶ 47.

Cincinnati." *Id.* ¶ 72.  Defendants answered Plaintiff's Complaint, Docs. [17] and [18], and then filed the present Motion, Doc. [19].

## Discussion

In their Motion for Judgment on the Pleadings, Defendants argue that "Underwriters' claims against both IEC and Cincinnati turn on whether IEC was required by a Design/Build Agreement to add Roeslein as an additional insured to Cincinnati's insurance policy issued to IEC." Doc. [20] at 4.  Because "[t]he Design/Build Agreement did not require IEC to do so," Defendants contend that they "breached no contract with or fiduciary duty to Roeslein, [and] Underwriters cannot recover on any of the four counts in the Amended Complaint." *Id.*  From Plaintiff's perspective, "it cannot be disputed that the Design/Build Agreement required IEC to list Roeslein as an additional insured."  Doc [26] at 2.  Thus, "Roeslein qualified as an automatic additional insured pursuant to [the CGL policy]," and Cincinnati was required "to defend and indemnify Roeslein" with respect to the Carrington lawsuit.  Doc. [24] at 14.  After careful review of the applicable agreements and their respective terms, the Court concludes that Defendants' arguments fail to demonstrate that they are entitled to judgment as a matter of law.

### A. Defendants have failed to show that Roeslein was not an automatic additional insured under the CGL policy issued by Cincinnati.

Defendants assert that Plaintiff's claims must fail because of the additional-insured exclusions stated in the Design/Build Agreement between IEC and Roeslein.  *See, e.g.*, Doc. [20] at 14.  According to Defendants, because the Agreement did not require IEC to list Roeslein as an additional insured "with respect to insurance required by" Section 5.2.1.2, or more specifically "[c]laims for damages because of bodily injury . . . of IEC's employees,"

*compare* Doc. [25-3] at 10, *with* Doc. [20] at 14, Roeslein cannot be considered an automatic insured under the CGL policy with regard to Carrington's personal injury claim. After all, Carrington's claim was premised on bodily injury to an IEC employee, which puts the claim "squarely under Section 5.2.1.2 of the Design/Build Agreement," Doc. [20] at 14, a section expressly omitted from the requirement to list Roeslein as an additional insured "with respect to insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive."

But determining whether Roeslein is an additional insured under the CGL policy must begin with an analysis of the applicable policy language. *See Long v. Shelter Ins. Cos.*, 351 S.W.3d 692, 701 (Mo. Ct. App. 2011) ("To determine whether an insurance policy provides coverage, we look to the insurance contract itself."); *see also Peterson v. Discover Prop. & Cas. Ins. Co*. 460 S.W.3d 393, 403–04 (Mo. Ct. App. 2015) (analyzing the additional-insured endorsement when answering the question whether a third party was covered under the relevant insurance policy); *see also Siddens v. Phila. Indem. Ins. Co.*, 631 S.W.3d 675, 680–81 (Mo. Ct. App. 2021) (explaining, in the context of motorist coverage, that "additional insureds are identified by being a member of a defined group contained within the policy").[3] As with any contract, "[w]hen interpreting an insurance policy, [the court] gives the policy language its plain meaning, or the meaning that would be attached by an ordinary purchaser of insurance." *Seaton v. Shelter Mut. Ins. Co.*, 574 S.W.3d 245, 247 (Mo. banc 2019). "A policy must be enforced as written when its language is clear and unambiguous." *Id.*

---

[3] There is no choice of law dispute between the parties. Although Defendants acknowledge in their Motion that IEC is a Minnesota insured, they cite both Missouri and Minnesota law in their brief, observing that "the laws of both states lead to the same outcome." Doc. [20] at 9–10. In its response, Plaintiff exclusively cites Missouri law. Doc. [24]. Unless the parties dispute the matter, the Court applies the substantive law of Missouri by default. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003) (citing *R.E. Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("[W]hen neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.")).

Here, the CGL policy provides that "[a]ny person or organization . . . whom you are required to add as an additional insured under this Coverage Part by reason of . . . a written contract . . . is an insured." Doc. [25-4] at 52. The relevant limitations put forth by the *policy* state only that the corresponding coverage applies "with respect to liability arising out of your work performed for that additional insured by you or on your behalf," within certain time limits, and subject to other exclusions that the parties do not address. *Id.* at 54–55. By the GGL policy's clear terms, then, Roeslein can be considered an additional insured under the policy if Roeslein was an organization "whom [IEC was] required to add as an additional insured . . . by reason of . . . [the Design/Build Agreement]." *Id.* at 52.

Defendants have failed to sufficiently establish that the Design/Build Agreement did not require IEC to do so. As an initial matter, neither party disputes that the Design/Build Agreement was an enforceable contract between IEC and Roeslein. *See Sanders v. Ins. Co. of N. Am.*, 42 S.W.3d 1, 15 (Mo. Ct. App. 2000) (setting forth the elements of a contract). Looking at its terms, Section 5.2.1 of the Design/Build Agreement unambiguously requires IEC to "purchase and maintain . . . Commercial General Liability [insurance] . . . [that] shall provide protection from claims set forth [in the agreement]." Doc. [25-3] at 9. Neither party disputes that the CGL policy issued by Cincinnati satisfied IEC's contractual obligation to "purchase and maintain" Commercial General Liability insurance. *Id.*

The Design/Build Agreement further provides that "[t]he policies of insurance required by Section 5.2.1 shall . . . [w]ith respect to insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive," include Roeslein as an additional insured, along with other entities and individuals not relevant here, "all of whom shall be listed as additional insureds." *Id.* at 10. Therefore, because the CGL policy at issue here was "required by Section 5.2.1" above, IEC

was contractually obligated to list Roeslein as an additional insured under the CGL policy if it provided insurance coverage for the four specified categories of claims specified in the Design/Build Agreement.  Those categories include (1) "Claims for damages because of bodily injury, sickness or disease, or death of any person other than [IEC]'s employees;" (2) "Claims for damages insured by customary personal injury liability coverage [subject to limitations not relevant here];" (3) "Claims for damages, other than to the Work itself, because of injury or destruction of tangible property wherever located [subject to limitations not relevant here]; and (4) "Claims for damages because of bodily injury or death of any person or property damage arising out of the ownership, maintenance or use of any motor vehicle."  Doc. [25-3] at 10.

Importantly, neither party disputes that the CGL policy provided insurance coverage for at least some of these categories.  Accordingly, the CGL policy *was* "insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive." *Id.*  And pursuant to the Design/Build Agreement, such insurance was required to "include [Roeslein as well as others] as additional insureds." *Id.*  It follows that Roeslein *can* be considered an additional insured under the CGL policy's plain terms.  After all, the CGL policy's "automatic" additional-insured provisions do not speak in terms of making additional-insured determinations based on categories of claims.  Doc. [25-4] at 52.  Rather, the CGL policy states only that any organization whom IEC was required to add as an additional insured by reason of a written contract "is an insured." *Id.*  Drawing all reasonable inferences in favor of Plaintiff, *see Thach*, 609 F.3d 955 at 957, it appears that the Design/Build Agreement required Roeslein to be added to the CGL policy as an additional insured because, to repeat, the CGL policy was "insurance required by Sections 5.2.1.3 through 5.2.1.6 inclusive."  Doc. [25-3] at 10.

Still, the Court does not agree with Plaintiff that the Design/Build Agreement is wholly irrelevant to the resolution of its claims.  *See* Doc. [26] at 9.  As best the Court can tell, the key question is one the parties do not brief—whether the CGL policy incorporates by reference the additional-insured coverage exclusions that IEC and Roeslein negotiated in their underlying contract.  *Cf. Crossman v. Yacubovich*, 290 S.W.3d 775, 779–80 (Mo. Ct. App. 2009) (holding that "[a] title-insurance policy may except a matter from coverage by reference to the provisions of another instrument without setting forth in detail the contents of those provisions" and proceeding to analyze whether the "instrument incorporate[d] another by reference"); *compare State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 810–11 (Mo. banc 2015) ("Terms not explicit in a contract may be incorporated by reference.  The intent to incorporate must be clear." (citations omitted)), *with State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 54 (Mo. banc 2017) (Stith, J., dissenting) ("Missouri law also is well-settled that mere reference to another agreement in the primary contract is insufficient to establish that a party bound itself to the other agreement." (cleaned up)).

As the Supreme Court of Texas has had occasion to explain, "it is possible for a named insured to purchase a greater amount of coverage for an additional insured than an underlying service contract requires."  *In re Deepwater Horizon*, 470 S.W.3d 452, 462 (Tex. 2015); *cf. Bellamy v. Pac. Mut. Life Ins. Co.*, 651 S.W.2d 490, 496 (Mo. banc 1983) ("An insurance contract is designed to furnish protection and will, where reasonably possible, be construed to accomplish this object.").  But just as courts look to "the insurance contract itself" to determine "whether an insurance policy provides coverage," *Long*, 351 S.W.3d at 701, courts likewise "rely on the policy's language in determining the extent to which, if any, [they] must look to an underlying service contract to ascertain the existence and scope of additional-insured

- 10 -

coverage." *Deepwater Horizon*, 470 S.W.3d at 462.  In other words, it is possible that IEC purchased more coverage for Roeslein than what was required under the Design/Build Agreement, and whether this is so depends on the terms of the CGL policy.  Neither the Court nor the parties have identified any case law indicating that the Supreme Court of Missouri would hold otherwise.[4]  Therefore, because it remains an open question whether Defendants are entitled to judgment as a matter of law, the Court will deny Defendants' Motion for Judgment on the Pleadings at this time.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("Judgment on the pleadings should be granted only if the moving party clearly establishes . . . it is entitled to judgment as a matter of law.").

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings, Doc. [19], is **DENIED** without prejudice.

Dated this 31st day of March 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[4] Defendants cite *Piatt v. Indiana Lumbermen's Mutual Insurance Co.* for the proposition that "CGL insurance is generally not intended to cover liability for injuries to employees" and "the purpose of CGL insurance is to protect businesses against the potentially vast liability that can arise from accidentally injuring members of *the public*."  461 S.W.3d 788, 792–93 (Mo. banc 2015).  Thus, so the argument goes, the Court should not construe the CGL policy to cover liability for injuries to Carrington, IEC's employee.  Doc. [19] 11–12.  But *Piatt* does not support this contention.  True, "CGL policies typically exclude liability for injuries to employees," *id.* at 792, but the court went on to explain that, by the operation of "separation-of-insureds provisions," such employee exclusions are typically confined, as in *Piatt*, "to situations where the *employer* is actually claiming the benefit of the policy."  *Compare id.* at 795 (emphasis added), *with* Doc. [25-4] at 33 ("Separation of Insureds").  Without such provisions, "an insurer could avoid liability . . . just because *some* insured was the injured person's employer, regardless of who is seeking coverage."  *Piatt*, 461 S.W.3d at 795.  Therefore, a CGL insurance policy *could* provide coverage for claims arising out of injuries to an employee where, as here, the insured seeking the benefit of coverage is not that employee's corresponding employer.  *See id.*